WATTS v. SOUTHERN BELL TELEPHONE & TELEGRAPH CO.

(Circuit Court, D. West Virginia. June 2, 1894.)

1. JURISDICTION—OWNER CAN ALONE SUE.
   Where insured property has been destroyed by a wrongdoer, and the insurer has paid to the owner less than the value of the property, the insurer cannot sue the wrongdoer in his own name for the injury. The action must be brought in the name of the owner of the property destroyed. Affirmed in 66 Fed. 460.
2. EVIDENCE—CROSS-EXAMINATION—REBUTTAL.
   If evidence is not strictly admissible, yet when introduced by one party, and not withdrawn, the other party may cross-examine the witness as to

such evidence, and offer evidence in rebuttal thereof. Affirmed in 66 Fed. 460.

3. EVIDENCE—REBUTTAL.

Where the issue was made by defendant that a house could not be set on fire by the use of a soldering iron, as claimed by plaintiff, it is competent, in rebuttal, to prove that the agent of the defendant, on the morning of the burning of plaintiff's house, by the use of the same soldering iron by him, and at plaintiff's house, and used in the same way, set fire to the window casing of another house where he was soldering wires. Affirmed in 66 Fed. 460.

4. INSTRUCTIONS—SPECULATIVE REFUSED.

An instruction purely speculative in its character will be refused.

5. INSTRUCTIONS.

"Must find from the evidence" is the proper form of instructing the jury, and it is not proper to say to the jury: "You must be satisfied and convinced by the evidence," etc. Affirmed in 66 Fed. 460.

6. INSTRUCTIONS—COURT MAY EXPRESS OPINION OF EVIDENCE.

It is the settled rule in the federal courts that the judge may express his opinion on the facts, when the matters of fact are ultimately submitted to the jury.

7. INSTRUCTIONS—CONSIDERED TOGETHER.

All instructions should be considered together, and the court is not bound to qualify each one, but it is sufficient if, taken together, they propound the law correctly.

8. INSTRUCTIONS—COURT NOT REQUIRED TO GIVE AS ASKED.

The courts of the United States are not required to give instructions as requested by counsel. If the court charge the jury rightly upon the case generally, it has done all the law requires. Affirmed in 66 Fed. 460.

This was an action on the case brought by C. C. Watts, a citizen of West Virginia, against the Southern Bell Telephone & Telegraph Company, a corporation created and existing under the laws of New York. The action was brought on the 19th day of March, 1894, to recover damages for the destruction, by fire, on the 7th day of February, 1894, of the plaintiff's house and furniture.

The declaration alleged that the defendant had some time before placed a telephone in the library room of plaintiff's house, and that "on the 7th day of February, 1894, the said defendant attached to and connected with said telephone instrument another wire, called and known as a 'return wire,' and, in so doing, bored a small hole through the wall of said house, from the outside to the inside of said library room, and through the window frame of said middle bay window of said library room, to which said telephone instrument was attached, in order to pass the said return wire through the said hole, and connect it on the inside of said room with said telephone instrument; that said connection was made by the said defendant by the process known as 'soldering,' and by means of a heated soldering iron, by the use of which the said return wire and the wire attached to said telephone instrument on the inside of said room, and running up the said window from the point of its connection with said return wire, near the top of said window frame in said room, were soldered together; and that the said window frame to which said instrument was attached was composed of well-seasoned pine lumber, and liable to be set on fire at the place where the said hole was bored, by the said soldering iron being brought in contact therewith. And the said plaintiff avers and says that the said defendant, its agent and servants, so wrongfully, unlawfully, carelessly, and negligently conducted themselves about the soldering and fastening of the said two wires together, and the handling and use of the said soldering iron, so as to bring said iron in contact with said window frame at the place where said hole was bored as aforesaid, whereby said window frame was thereby, then and there, set on fire, and said dwelling house, of the value aforesaid, was then and there entirely burned and destroyed, together with the following personal property," etc., and claiming $9,000 dam-

ages. The trial was had at Charleston, W. Va., at the May term, 1894, before the Honorable JOHN J. JACKSON, sitting as circuit judge, and a jury.

The defendants tendered a plea to the jurisdiction of the court, setting up the fact that the plaintiff was insured in the insurance companies named, and had received on the loss of his property about $4,400, and that the said companies had been subrogated to the rights of the plaintiff, and the action is being prosecuted for their benefit, and that none of said insurance companies are residents of this district where the action is brought. To this plea the plaintiff demurred; and, on argument, the court sustained the demurrer, and held the plea bad; that the plaintiff, C. C. Watts, where the destroyed property was greater than the insurance thereon, could alone sue the wrongdoer for the destruction of his property; therefore he was alone the proper plaintiff in the action, and the court clearly had jurisdiction. Thereupon the defendant demurred to the declaration, which demurrer the court overruled. The plea of not guilty was then entered, and a jury was selected and sworn to try the issue joined. The plaintiff introduced evidence tending to prove that the defendant company sent its workmen to plaintiff's dwelling about half past 11 o'clock on the morning of February 7, 1894, to put up a return wire, and connect it with the telephone instrument which the company had, under contract, placed in the library of plaintiff's house for his use; that the family had given up said room to the agents of said company on said morning, to do said work; that said agents were at work there about an hour, and, when they had been gone about an hour, the house was discovered to be on fire. The plaintiff introduced evidence further tending to prove that defendant's workmen introduced the wire by boring a hole in the upper corner of the casing of the bay window of said library room; that the cavity of the casing extended below the floor to the sill of the house; that the wire so introduced had been soldered to a short wire on the telephone instrument; and that the other wires were at the same time and near the same place soldered with a hot soldering iron, heated to a cherry heat. The plaintiff further introduced evidence tending to show that the house had been built about seven years, and at the bottom of the casing shavings had been left by the carpenters who built it, and the contention of the plaintiff was that the fire had been communicated through the hole in the casing, and had set fire to cobwebs or other inflammable substances inside, and had dropped down to the shavings in the bottom of the casing below the floor of the library room. The plaintiff's testimony tended to prove that the family left the library when the workmen came; and that they sat down to the dinner table in the dining room, across the hall from the library, about 12:20 o'clock p. m.; and that, while they were eating their dessert, a noise in the direction of the library was heard as if something had fallen, which startled them. The plaintiff contended said noise was made by the falling of the weight in the window casing after the cord had been burned off; that they at once went into the hall, and found it full of smoke, and smoke was coming into the bay window of the library; and, running around the house, the family and servants saw fire under the library bay window, immediately under the telephone instrument, and smoke and blaze issuing from the iron ventilator underneath, and from the weather boarding over and above the window, and this was the first place where the fire was seen. The plaintiff also introduced evidence tending to prove that such a heated soldering iron as the workmen used, if placed in contact with wood of the kind the window casing was made of, would cause a blaze or spark of fire to pass through a hole in the wood, and ignite any inflammable substance inside. The plaintiff further offered evidence tending to prove that there was nothing inflammable in the cellar under the library, but that in the cellar under Mrs. Watts' room, adjoining the library, there were dry leaves several feet deep; but at the time the fire was first discovered, and all the time the house was burning, the wind was blowing from the library, and across Mrs. Watts' room, so the plaintiff contended that this showed the fire could not have originated in the leaves. The plaintiff gave in evidence other facts and circumstances tending to prove that the fire which destroyed his house was caused by the careless use of a heated soldering iron by defendant's workmen, and that there was no other cause for the fire. The defendant introduced evidence tending to prove that there was a flue in the cellar under Mrs. Watts' room, and the said cellar was full of dry leaves at the time of the fire, and its contention was

that a spark of fire went from the library up the flue, and then fell down the flue, into the cellar, and ignited the leaves. It offered evidence tending to show that no furniture was saved from Mrs. Watts' room, while the most of the furniture and books were saved from the library. The defendant also offered evidence tending to prove that fire might go up one flue in a chimney, and down another flue in the same chimney, and set fire to a house; also evidence tending to prove that the soldering iron was carefully handled at plaintiff's house, and that defendant's agents did not set fire to the house; also evidence tending to prove that fire could not with a properly heated soldering iron be communicated to the casing; that the fire could not have been communicated as claimed by the plaintiff. The defendant introduced a witness, Rauch, the workman who did the soldering, who testified there was no new hole bored to insert the new wire, but a small quarter-inch hole already there was used; that the soldering iron was not heated to a red heat, but only sufficiently to melt the solder, and that in making the connections he soldered three wires, but did not bring the iron in contact with the casing or scorch it, and that the iron was immediately passed out of the window to a workman outside, and carried away; that, after soldering, he bent the wires with his fingers, and saw nothing unusual. This witness, in answer to questions by the defendant, said, on that morning, before he went to plaintiff's house, he went to Sullivan's store, and put in a wire. On cross-examination, he described just what he did at Sullivan's, but against the objection of the defendant. Against the objections of the defendant, he stated that he soldered wires there with the same soldering iron that he afterwards used at the plaintiff's house; that he did not burn the wood at Sullivan's; that he soldered the wire at Sullivan's in the same way that he did at plaintiff's house, and in the same way he had shown the jury. The counsel for the defendant moved to exclude this evidence so elicited on cross-examination, but the court overruled the motion, on the ground that, as the defendant had opened up the question as to the work at Sullivan's, the evidence was competent. In rebuttal, the plaintiff introduced said D. M. Sullivan, who, against the objection of the defendant, gave evidence tending to prove that by the soldering done at his house by the said Rauch, in the same way as at plaintiff's house, he scorched and burned his window casing. The court overruled the objection, and refused to exclude the testimony, and held that, as the defendant had opened the subject, the evidence for that reason was competent; and, further, that it was competent substantive testimony in rebuttal, after the defendant had introduced evidence tending to show that it was impossible to set a house on fire by the use of a soldering iron in the manner claimed by the plaintiff in this case.

The plaintiff asked no specific instructions, but asked the court to charge the jury on the whole case. The defendant asked eight several instructions, as follows: "No. 1. The court instructs the jury that the defendant, by its agents, servants, and employés, had lawful right to go upon the premises and into the dwelling of the plaintiff, at reasonable times and in reasonable manner, to make necessary changes and repairs in defendant's telephone line in said dwelling. No. 2. The court instructs the jury that the presumption is that the work done by the defendant in and about plaintiff's dwelling February 7, 1894, in the line of their duty, was done in a proper and skillful manner; and, before a verdict can be found for the plaintiff, the jury must find from the evidence that said work was done in an unskillful and negligent manner, which resulted in the burning of the plaintiff's house. No. 3. The court instructs the jury that, if they find from the evidence that there are other theories of the origin of the fire that consumed the plaintiff's house equally as probable as the one on which plaintiff bases his case, then the jury must find for the defendant. No. 4. The court instructs the jury that, before they can find a verdict in this case, they must find from the evidence that the fire that consumed plaintiff's house originated from the careless and negligent use of a soldering iron, in joining wires on defendant's line in plaintiff's house by defendant's servants. No. 5. The court instructs the jury that if they find from the evidence that, at the time the plaintiff's house was burned, he had dry leaves from four to six feet deep stored in his cellar, that said cellar had an open door leading out therefrom, and that there was a seven-inch thimble in flue leading to top of open chimney from chimney butt in

same room that contained said leaves, then it is a question with the jury whether such action on the part of the plaintiff does not constitute such contributory negligence as to prevent any recovery by him in this cause. No. 6. The court instructs the jury that, if they find that the evidence proves merely that a probability exists that the burning of the plaintiff's property was caused by the negligence of the defendant's servants or agents, that will not authorize them to find a verdict for the plaintiff; but that the burden is on the plaintiff to prove that such burning was on the negligence of the defendant, its servants or agents. No. 7. The court instructs the jury that, in order to find a verdict for the plaintiff, they must be satisfied and convinced by the evidence that the fire was caused by the negligence of the defendant or its agents or servants in soldering the telephone wire in plaintiff's house, and that they will not be justified in finding for the plaintiff simply because they may find that the evidence renders it merely probable that said fire was so caused. No. 8. The court instructs the jury that even if they find from the evidence that the theory advanced by the plaintiff, and stated in the declaration, as to the origin of the fire, is more probable than any theory advanced by the defendant as to the origin of said fire, still they will not be justified in finding for the plaintiff, unless they are convinced by the evidence that said theory of the plaintiff is the true one as to the origin of said fire." These instructions were all disposed of in the charge to the jury. Nos. 1, 2, 4, and 6 were given as asked; Nos. 3 and 5 were refused; and Nos. 7 and 8 were modified.

Brown, Jackson & Knight, Okey Johnson, W. L. Ashby, and J. E. Chilton, for plaintiff.

Couch, Flournoy & Price, for defendant.

JACKSON, District Judge (charging jury). I congratulate you on the fact that you have reached, or are about to reach, the termination of this protracted trial. Of course, this is an important case to both the plaintiff and defendant. It is an action brought by the plaintiff to recover damages for the loss and destruction of his residence and personal property that was contained in said residence when it was destroyed by fire. It is alleged by the plaintiff that his residence and personal property was destroyed by fire on the 7th day of February, 1894, caused by the negligence of the agents of the defendant. I wish to say now that I do not intend in anything that I say to you to indicate what this evidence proves. You are to determine for yourselves what it proves, and, if I say anything that would seem to indicate what I think in this matter, you must pay no attention to it. I will give you the law, as is my right to do, and you are to apply it to the facts.

The evidence shows some undisputed facts. The first undisputed fact is that the house of the plaintiff was burned on the 7th day of February, 1894. The second is that the servants of the defendant were there on that morning, somewhere between 10 and 11:30 o'clock, making some changes in the telephone wires. The third undisputed fact is that the house shortly afterwards, within an hour, was on fire. The evidence then shows, if it shows anything, by some eight or ten witnesses, that the fire was at a certain point in the house. There is no evidence in the case, that I am aware of, that tends to show that this fire commenced at any other place than under the library floor in that house. If there is other evidence in conflict with this, of course you must consider it, and determine the case upon the weight of all the evidence. If there

has been any evidence given showing that the fire did not commence in the room under the library or in the library, or in or about the floor or place where it is claimed to have commenced, you must consider it, and give it such weight as you think it should have. Evidence has been tendered and offered by the plaintiff to show you the exact place where it did commence, but that is for you to consider and determine. Now, you are to determine this case from the evidence that has been delivered in your presence here. You are not only to consider the evidence of the plaintiff that has been delivered, but of the defendant also; and, in considering the evidence, it is your duty to reach some conclusion. That conclusion must be reached with reference to the weight of the evidence. That is the rule in civil cases, and it must be consonant with the preponderance of the evidence. If the plaintiff shows by a preponderance of the evidence that his house was burned by the carelessness and negligence of the defendant, then he is entitled to a verdict if the preponderance of the evidence convinces you of that fact. If, on the contrary, from the preponderance of the evidence, you reach the conclusion that the house was not burned by the negligence and carelessness of the agents of the defendant, you must find for the defendant. Or, in other words, in this case the facts and circumstances introduced by the plaintiff are to be considered as showing what he claims in this suit,—that his house was burned by reason of the carelessness and negligence of the defendant. On the other side, there is a chain of circumstances, as well as facts, offered by the defendant, to show that this house was not burned by the negligence and carelessness of the defendant, but by some other cause. If the circumstantial evidence before you shows that the house of the plaintiff was destroyed or burned down, and that the destruction or burning of the house was by reason of defendant's agents or employés working at and repairing its telephone attached to and connected with the house of the plaintiff as claimed, you should find for the plaintiff. But, if you reach the conclusion that the burning of the house was not the result of the negligence of defendant's agents or employés, you should find for the defendant. In civil cases the rule is that the jury should find for the party on whose side the weight of the evidence preponderates.

The defendant has asked eight instructions. The first one is intended to cover the right of the defendant to enter upon the premises of the plaintiff to make changes and repairs in the telephone. As the contract or lease gives the right, unquestionably it is the law, and therefore I give this instruction.

The second one, which is also given, instructs the jury that the presumptions are in favor of the work having been properly done at the plaintiff's house, and the burden of proof is upon plaintiff to show that the work was not properly done. Of course, the evidence is before the jury, and the jury will determine from the evidence as to how this work was done, whether it was carelessly or negligently done; and, if so, you will, of course, find for the plaintiff, if the fire was the result of the negligence of the defendant's agents, as claimed by the plaintiff.

The third instruction offered by the defendant the court refuses to give. It is purely speculative.

The fourth instruction I have given you. You must be convinced of the fact that the defendant, by its agents, was guilty of negligence in soldering in this house.

The fifth instruction offered by defendant the court refuses to give.

The sixth instruction is given.

Instructions 7 and 8 the court will give with slight alterations, but they are not drafted as I should like them. The seventh instruction read: Changed to "must find from the evidence," etc. Eighth instruction read: Changed to "unless you find from the evidence," etc.

I am asked to instruct you as to the weight and effect of circumstantial evidence. This character of evidence may be as convincing, and sometimes more so, than positive or direct evidence. As in this case, it is a change of circumstances coming from different sources, which are less likely to be false, and from which falsehood can be more easily detected. It is the reasoning from known and established facts to establish such as are claimed to exist, and is "capable of producing the highest degree of moral certainty in its application." Therefore, if the circumstantial facts detailed and proven before you lead your minds to the conclusion that the house of the plaintiff was destroyed and burned down, and that the firing and burning of the house was the result of the negligence of defendant's agent and employés, in soldering its wire while working at or repairing its telephone attached to and connected with the house of the plaintiff, you should find for the plaintiff. But, if you reach the conclusion from all the evidence that the burning of the house was not the result of the negligence of defendant's agents or employés, you should find for the defendant. In civil cases the rule is that the jury should find in favor of the party on whose side the weight of evidence preponderates, consistent with the probability of truth. There are two theories offered here,—one by the plaintiff, and one by the defendant. If you find for the plaintiff, you must reach a conclusion in your mind, from a preponderance of the evidence, that the burning of this house resulted from the negligence and carelessness of the defendant, his agents or employés, in their altering and repairing the telephone wires in this house, as claimed by the plaintiff; otherwise you should find for the defendant.

The defendant excepted to the refusal to give instructions 3 and 5, and modifying instructions 7 and 8, and to certain parts of the oral charge to the jury. After argument, the jury rendered a verdict for plaintiff for $9,000, the damages claimed in the declaration. The defendant moved to set aside the verdict, as against the law and the evidence, which motion the court overruled, and entered judgment on the verdict.

NOTE. The judgment in this case was on writ of error affirmed, in Richmond, in the United States circuit court of appeals, February 5, 1895. 66 Fed. 460.