**TWACHTMAN v. CONNELLY.**

No. 7912.

Circuit Court of Appeals, Sixth Circuit.

Sept. 18, 1939.

502

504

Murray Seasongood, of Cincinnati, Ohio (Paxton & Seasongood, of Cincinnati, Ohio, and Estabrook, Finn & McKee, of Dayton, Ohio, on the brief), for appellant.

S. S. Markham, of Dayton, Ohio (McMahon, Corwin, Landis & Markham, of Dayton, Ohio, on the brief), for appellee.

Before HICKS, ALLEN, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

This is an appeal from a jury verdict in an action in which appellant seeks to recover damages for alleged negligence of the appellee in discharging his duties as her compensated agent.

Appellant assigns error to the denial by the lower court of her right to recover for failure of appellee, her trustee, to fur- nish her information as to the financial condition of the Union Trust Company of which he was a director and in which she owned 1,104 shares of stock.

She also assigns error to the rejection and admission of evidence. She assigns error to the rejection of her amended peti- tion tendered during the trial; to the ex- clusion from the court room of her hus- band, Quentin Twachtman, during the tak- ing of her evidence; to the argument of counsel before the jury; to the court's charge and to the overruling of her motion for a new trial.

Appellant alleged in substance that in February, 1927, she executed and delivered to appellee a written power of attorney, authorizing him to have the securities de- scribed therein, including 276 shares of the capital stock, par value $100, of the City National Bank of Dayton, Ohio, pred- ecessor of the Union Trust Company, transferred to him with full power to vote it with all incidental rights except that of sale. She alleged that appellee was then a director of the City National Bank, and so continued until the Union Trust Com- pany closed October 31, 1931; that she re- sided at Greenwich, Connecticut, a long distance from Dayton, and relied exclu- sively on appellee for factual information relating to the various securities included in the trust instrument.

She alleged that early in 1930 she asked appellee for advice, particularly as to the sale of all, or a substantial part of the Union Trust Company shares, and in June of that year requested him to sell approxi- mately twenty-five percent and on June 30, 1930, he advised her he was endeavor- ing to do so; that there had been no de- cline in the price and that he was imme- diately placing it with the trust company for sale but on August 16, 1930, appellee advised her no bidders could be found and stated he was leaving the stock listed for sale at not less than ninety dollars per share, net. She alleged that up to this time, both the bid and asked price for the stock were $90 or more and until January 1931, it had not been sold, whereupon she insisted that appellee make a more diligent effort to dispose of it.

She alleged that in August, 1931, she orally advised appellee that if there were any possibility of the Union Trust Com- pany being in a questionable financial con- dition he should sell her stock at the best obtainable price and he assured her that

the trust company's financial condition was entirely satisfactory and he would continue his efforts to sell and take the necessary steps to protect her interest.

She also alleged that he knew, and for many months prior to August, 1931, had known, or by the exercise of ordinary care could have known, that the Union Trust Company was in a failing condition and had theretofore attempted, and was then attempting, to obtain financial aid from other banks; that its directors were endeavoring to form a pool to protect the rapidly declining sale price of its stock and consolidate it with the Winters National Bank & Trust Company of Dayton. She alleged that the appellee knew these facts, but withheld them from her, and by the exercise of due diligence, could have sold her stock at $90 per share.

Appellant alleged that appellee at no time advised her of the declining value of the stock; that the Union Trust Company went into insolvent liquidation October 30, 1931, and as a consequence thereof, her stock became worthless; that she had lost $99,360 because of his negligence and had incurred also a statutory liability because of her ownership of the stock which, due to her distressed financial condition, was settled for $3,000. She sought to recover $102,360.

The court admitted evidence as to the financial condition of the trust company from June 18, 1930, to October 30, 1931, its closing date, but restricted it to whether appellee failed to exercise reasonable care, skill and judgment in not selling the stock and further whether his failure to do so was because of his directorship in the bank. Appellant insists the evidence should have been considered for the further purpose of ascertaining whether she was entitled to recover damages on the ground that appellee had negligently failed to furnish her the information as to the failing condition of the bank which would have enabled her to offer the stock at a lower price in 1930.

The court, in its final charge, limited appellant's right to recover to appellee's failure, if any, to exercise reasonable care, skill and judgment in attempting to sell the stock and refused to permit her to recover because of appellee's failure to advise her of the financial condition of the trust company. The error assigned to the charge limiting the grounds on which appellant could recover and the weight to be given the evidence are essentially the same and will be disposed of together.

Appellant put in evidence the minutes of the meeting of the Board of Directors tending to show the financial condition of the trust company, at which time the court instructed the jury that appellee was under no legal obligation to furnish to appellant any information about the financial condition of the trust company subsequent to August 31, 1931, and that these minutes would be considered solely for the purpose of throwing light, if any, on the good faith effort of appellant to sell the stock.

In its final charge, the court instructed that before finding for appellant, the jury must believe, from a fair preponderance of the evidence, that she directed appellee to sell her shares of stock, or part thereof, at $90 per share or less and that appellee failed to exercise reasonable care, skill and judgment in carrying out her instructions or failed to sell the stock by reason of his directorship in the trust company and that it could consider the evidence as to the financial condition of the bank only for the purpose of showing the good faith or lack of it on the part of appellee.

■ Pleadings are to inform the court and the parties of the facts in issue that the court may declare the law and the parties may know what to meet by their proof.

■ In common law or code pleading, the essential facts of a cause of action should be unequivocally plead, matters of substance being in positive and direct terms in order to obviate uncertainty. Deducible arguments or references from pleadings may not be used as a basis of proof and where both general and specific allegations are made respecting the same subject matter, the specific restrict the general and likewise restrict the proof.

■ Under Section 11306 of the Ohio General Code, plaintiff may unite in one action all causes arising from the same transaction or transactions connected with the same subject and this includes actions, legal, equitable, ex contractu and ex delicto, but if they do not arise from the same transaction or transactions connected with the same subject, then cases ex contractu cannot in general be united with those ex delicto. Sturges v. Burton, 8 Ohio St. 215, 72 Am.Dec. 582.

Appellant insists that she has alleged two grounds of recovery cognizable under

the above code; first, the negligent failure of the appellee to keep her advised of the unfavorable condition of the trust company; second, his negligent failure to carry out her instructions to sell. When appellant's declaration is stripped of recitals, arguments and references, it states but one ground of recovery, viz., the negligent failure of appellee to sell the stock.

In order to afford sufficient basis for an action of deceit, the representations made or the facts concealed must have been material and must have had such relation to the transaction under consideration as to operate as an inducement to the action or omission of the complaining party (Kimber v. Young, 8 Cir., 137 F. 744, 745) and in addition, plaintiff must allege and prove some specific damage sustained because of the deceit or fraudulent conduct. B. F. Avery & Sons v. J. I. Case Plow Works, 7 Cir., 174 F. 147.

In the case here appellant makes no claim of damages because appellee did not advise her of the condition of the bank. She alleges unequivocally that appellee could, and should, have sold the shares of stock at $90.

Appellant now undertakes to apply the proof to establish the predicate that the stock was worthless. The court will not lend its aid to such inconsistencies. Milske v. Steiner Mantel Company, 103 Md. 235, 63 A. 471, 5 L.R.A.,N.S., 1105, 115 Am.St. Rep. 354; Reiff v. Mullholland et al., 65 Ohio St. 178, 62 N.E. 124.

Appellant's action is not based on the declining values of the trust company's assets reflected in the falling price of the stock, but on the failure of appellee to sell the shares in an available market, which it is claimed he did not do because he was an official of the trust company and owner of its stock. It therefore follows that evidence of appellee's failure to keep appellant informed of the condition of the trust company throws no light on the issue, except his lack of good faith in carrying out appellant's instructions to sell.

It is a familiar and elementary rule that pleadings and proof must reasonably correspond. Standard Oil Company v. Brown, 218 U.S. 78, 87, 30 S.Ct. 669, 54 L. Ed. 939. The lower court committed no error in restricting the scope of appellant's evidence and the grounds of her recovery.

On cross-examination appellant was required to testify over her objection that after the trust company closed she transferred to her husband, Quentin Twachtman, a valuable house and lot in Dayton, Ohio, and also that she sold at $260 a share, 26 shares of stock in the Fifth & Third National Bank at Cincinnati.

Under the rule that evidence must be confined to the points at issue, that the attention of juries may not be distracted nor public time needlessly consumed, collateral facts are excluded which have no connection with the subject litigated and are therefore incapable of shedding light on the inquiry or affording grounds for reasonable presumptions or inferences.

It is a corollary to this rule of equal judicial dignity that if a party interjects in a case incompetent and unrelated facts, the opposite party has the right to give his version of them if otherwise he would be prejudiced. Bradley v. Adams Express Company, 6 Cir., 89 F.2d 641.

Appellant, in her verified amended petition, stated parenthetically that "because of her distressed financial condition" she was able to settle her statutory liability for $3,000. Appellee, by answer, denied this statement and when her counsel objected to the questions on cross-examination as to the transfer of her property as being irrelevant, the court suggested that the amended petition would be taken by the jury when it considered the case and that if counsel would withdraw the statement of fact in the amended petition his objection would be sustained but this counsel declined to do. In our opinion appellant is in no position to complain of the court's ruling. Compare Bogk v. Gassert, 149 U. S. 17, 30, 13 S.Ct. 738, 37 L.Ed. 631; Warren Live Stock Company v. Farr, 8 Cir., 142 F. 116; Herfurth, Jr., Inc., v. United States, 66 App.D.C. 220, 85 F.2d 719.

Appellant objected to the cross-examination as to the circumstances under which she originally executed power of attorney to appellee. The question related to a matter connected with the very issue on trial.

Counsel for appellee asked appellant's husband on cross-examination if his complaint against appellant was that the bank was in a bad shape and appellant knew it. Appellant excepted to the use of the word "complaint."

The course to be pursued in cross-examination is largely within the discretion of the trial court. There was no abuse

here. Storm v. United States, 94 U.S. 76, 85, 24 L.Ed. 42; Alford v. United States, 282 U.S. 687, 694, 51 S.Ct. 218, 75 L.Ed. 624; District of Columbia v. Clawans, 300 U.S. 617, 634, 57 S.Ct. 660, 81 L.Ed. 843.

■■ Over the objection of appellant, appellee was permitted to prove that the sales of the trust company shares relied on by appellant as establishing a market were between brokers. Sales of similar property is one of the most satisfactory methods of determining the presence of a market for personal property. The circumstances under which such sales take place may have a bearing on the weight of the evidence. It is common knowledge that sometimes a fictitious market is created for shares of stock. It was competent for appellee to show the character of sales of the trust company shares as explanation for their lack of indication of a market. Cliquot's Champagne, 3 Wall. 114, 70 U.S. 114, 145, 18 L.Ed. 116; 22 C.J. 190, Section 155.

Over the objection of appellant, W. H. Kiefaber, a director of the Union Trust Company and Chairman of its trust committee, testified that from 1930 to October 31, 1931, he owned in his own right and as trustee 1,000 shares of its stock; that he retained all of it until the bank closed and paid the statutory liability and had made a deposit in the trust company the day before it closed.

The lower court admitted this testimony as having a bearing on the good faith of appellee in his transactions with appellant. The court sustained an objection to the cross-examination of this witness as to the financial condition of the trust company to which appellant assigns error.

■ The duty rested on appellee to exercise reasonable care, skill and diligence in the transaction of the business intrusted to him and if he exercised the same degree of care and diligence that a prudent person would exercise under like circumstances, he was not liable.

■ There was a similarity, or unity, of conditions between appellee and the witness. What is done by one or more persons, or set of persons, under similar circumstances may be some evidence of the degree of care exercised by any one of them. Home Insurance Company v. Weide, 11 Wall. 438, 78 U.S. 438, 442, 20 L.Ed. 197. The weight of the evidence was for the jury.

■ The trial court has a liberal discretion in determining ·the latitude to be given on cross-examination and an error in the exercise of this discretion must be plain and harmful before it may be made a ground for reversal. · Sloan Company v. Uncasville Manufacturing Company, 3 Cir., 240 F. 680. The admission or exclusion of evidence in a jury trial is not ground for reversal where it affirmatively appears that the rulings, if erroneous, are harmless. Copper Process Co. v. Chicago Bonding & Insurance Co., 3 Cir., 262 F. 66, 8 A.L.R. 1477. We are of the opinion that if there were any error in the admission of the evidence complained of or the restriction of the cross-examination of the witness, it was not prejudicial, but harmless.

■ Error is assigned to the exclusion from the court room, during appellant's testimony, of Quentin Twachtman, her husband, who was not a party to the action. This was neither an·abuse of discretion nor a reversible error. Hood v. United States, 8 Cir., 23 F.2d 472; Holder v. United States, 150 U.S. 91, 92, 14 S.Ct. 10, 37 L.Ed. 1010; Laughlin v. State, 18 Ohio 99, 51 Am.Dec. 444.

■ It is claimed the court erred in refusing to allow appellant's counsel to cross-examine appellee concerning his recollection of the contents of the minutes of the meeting of the Board of Directors except by allowing the witness to have the minutes before him when testifying. This was not an error. 28 R.C.L. 601, § 191; Chicago, Milwaukee & St. Paul Railway Company v. Artery, 137 U.S. 507, 521, 11 S.Ct. 129, 34 L.Ed. 747; Kimble v. Kiser, 4 Cir., 59 F.2d 626.

■ Appellant owned a majority of the stock of the Ohio Paper Company which was included in her power of attorney to appellee who was president of the Company. Appellant sought to prove by appellee on cross-examination that he received a monthly salary of $500 from this Company to which the lower court sustained an objection and error is assigned to this ruling.

Greater latitude is allowed in the cross-examination of a party to a suit than other witnesses, but when the cross-examination pertains to matters not inquired about on direct, its course and extent are largely subject to the control of the trial court in the exercise of a sound discretion. If this discretion did not exist, trials might be

rendered interminable. The court's discretion was not abused. Benham v. United States, 6 Cir., 13 F.2d 558.

Appellant, in her original petition, in addition to general damages, claimed as special damages, $3,000 which she had paid in settlement of her statutory liability on her stock. In the course of the trial, she tendered an amended petition increasing her special damages $22,640 which the court rejected, unless filed on terms which appellant declined. To this ruling, error was assigned.

Thinking as we do that appellant was not entitled to recover special damages under her agreement with appellee or on the evidence, we are not required to consider whether the lower court abused its discretion in rejecting the amendment. Counsel for both parties tried the case on the theory that the sums paid by appellant under statutory liability were recoverable if appellant otherwise proved her claim. This is an error of which we may take notice even though not assigned. Walsh v. Segale, 2 Cir., 70 F.2d 698; Rice v. Baltimore & Ohio Railroad Company, 6 Cir., 42 F.2d 387; Thompson v. Hocking Valley Railroad Company, 6 Cir., 45 F.2d 155; New York Central Railroad Company v. Johnson, 279 U.S. 310, 333, 49 S.Ct. 300, 73 L.Ed. 706.

The question does not open up a new field of legal investigation. The rule is firmly established that damages which may be recovered for breach of contract are such as may fairly and reasonably be considered as either arising naturally, that is, according to the usual course of things, from the breach of the contract itself, or such as may reasonably be supposed to have been in contemplation of both parties at the time they made the contract as the probable result of the breach of it.

No special circumstances are plead by appellant or proved to have been known to either of the parties at the time the contract was entered into from which it could have been reasonably anticipated that damages would flow from the breach other than those from an ordinary contract to sell shares in a corporation. Mere notice by appellant to appellee that she wished to sell the shares to avoid statutory liability was not enough to support an implied understanding that if appellee breached his contract, he would not only become liable for the decline in the value of the shares but in addition for the statutory liability.

Globe Refining Company v. Landa Cotton Oil Company, 190 U.S. 540, 547, 23 S.Ct. 754, 47 L.Ed. 1171. The court committed no error in rejecting the amended petition.

Appellant complains that statements made by appellee's counsel in his closing argument to the jury were both improper and prejudicial. Counsel, referring to appellant, said: "Now we have as plaintiff here the granddaughter of a wealthy man and who has always had plenty of money and still has."

On objection, the court stated: "The latter part of it will be stricken out."

Thereupon counsel stated: "We will withdraw it," and the court said: "It is not an issue in the case, it will not be considered."

Thereupon counsel continued:

"Now, gentlemen, she has been used to the things that money buys and she just can't take it when something goes wrong with her affairs. Many of you and many people you have known have had their misfortunes and their troubles, their sorrows, their burdens, and they took it without attempting to unload it off onto somebody else and to claim at all costs 'It isn't my fault or it isn't my bad luck; it isn't my misfortune.' I will say to you that this plaintiff and her husband are the type of people who, if this stock had been sold at thirty dollars a share along in August, September, October of 1931, and then if the bank had happened not to close and had kept going and after the depression got righted around and that stock had come back, then there would have been a suit because the stock was sold. Since the bank closed, there is a suit because the stock was not sold.

"We find the following conduct admitted on behalf of the plaintiff. She says that she came to the conclusion that she did not want bank stock because it had double liability attached to it, and she was afraid she could not pay it. Double liability did not burden the plaintiff or her husband to any great extent. There was a rush out here and an attempt to get rid of assets—"

On objection, the court said: "He may comment on what was done. That is in the evidence. It is perfectly proper."

Counsel should not introduce extraneous matter before a jury or, by questions or remarks, endeavor to bring before it unrelated subjects and, where there is a

reasonable probability that the verdict of a jury has been influenced by such conduct, it should be set aside.

The power to set aside verdict for misconduct of counsel should be sparingly exercised on appeal. The determination of the extent of permissible comment and argument by counsel rests primarily in the judicial discretion of the lower court. We do not believe the remarks of counsel here urged as misconduct were of such gravity as to require a reversal in view of the timely admonition of the lower court and its cautionary instructions that argument of counsel should not be considered as evidence and that the case should be decided by the jury dispassionately, with complete impartiality and without sympathy or favor. Graham v. United States, 231 U.S. 474, 481, 34 S. Ct. 148, 58 L.Ed. 319; Maryland Casualty Company, Inc., v. Kelly, 4 Cir., 45 F.2d 788; Prudential Insurance Company v. Murphy, 7 Cir., 74 F.2d 544.

The assignment that the court erred in denying a new trial and to other parts of its charge, has been waived by appellant since not specified or argued in the brief. H. E. Winterton Gum Company v. Autosales Gum & Chocolate Company, 6 Cir., 211 F. 612.

However, upon inspection of the entire record, we do not find any error entitling the appellant to a new trial.

The judgment of the District Court is affirmed.